## FISKE et al. v. STATE OF MISSOURI et al.
### No. 9630.

Circuit Court of Appeals, Eighth Circuit.
Feb. 19, 1934.

Rehearing Denied March 7, 1934.

See, also, (C. C. A.) 62 F.(2d) 150.

G. A. Buder, Jr., of St. Louis, Mo. (O. E. Buder, of St. Louis, Mo., on the brief), for appellants.

Powell B. McHaney, Asst. to Atty. Gen. of Missouri (Roy McKittrick, Atty. Gen. of Missouri, and Gilbert Lamb and John W. Hoffman, Jr., Assts. to Atty. Gen. of Missouri, on the brief), for appellees.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

STONE, Circuit Judge.

Ehrhardt D. Franz left a testate estate to his wife, Sophie, and their ten children.

A portion thereof later passed into a trust with the same persons as beneficiaries. Extended litigation developed, wherein three and one-third of the ten children' interests were arrayed against the mother, the trustees, and six and two-thirds of the children interests. Broadly, this litigation determined the interests of all parties to the trust to be that the mother had a life interest in the income from the trust estate and that the trust would terminate at her death when the trust estate would be distributable by the trustees to the other beneficiaries. The mother died testate and her separate estate is in course of administration in a probate court in Missouri. At this stage, the other beneficiaries under the trust moved for distribution of the trust estate.

Before this motion was acted upon, the state of Missouri (through its proper officials) obtained leave to intervene. This intervention was based on the grounds that the state was entitled to inheritance taxes upon the estate of the mother; that the interests in the trust estate of the above six and two-thirds of the children interests were parts of the mother's estate and subject to the tax; that these interests were not inventoried in her estate; that the owners of such six and two-thirds interests were nonresidents of the state, and if their interests in the trust estate were distributed direct to them the state would lose its lien for such taxes. Therefore, it prayed that a sufficient portion of the trust estate to secure such taxes which might go to such interests be transferred from the trustees to the court registry and be there held "until it may be determined in the Probate Court of the City of St. Louis whether such stock should be inventoried" as a part of the mother's estate.

Shortly after filing of this intervention, representatives of five of the above six and two-thirds interests filed an "Ancillary and Supplemental Bill of Complaint for an Injunction" against the state and certain others alleging that it and they had caused a citation from the above probate court to be served on the executor of the mother's estate for the purpose of having their above interests in the trust estate inventoried in and as part of the mother's estate and that such would be contrary to the decree of the federal trial court adjudging them entitled to receive these interests direct from the trustees. The state, appearing specially, moved to dismiss this ancillary and supplemental bill on the ground (among others) that it was an action against the state in violation of the Eleventh Amendment. This motion was sus-

tained, and, the parties declining to further plead, the bill was dismissed. From the order of dismissal, the above children interests appealed.

Several months later, the court entered an order on the above intervention by the state, on a petition by the trustees for directions as to distribution of the trust estate and on petitions of various beneficiaries under the trust for distribution. Among other things, this order was that the intervention be dismissed without prejudice and that the above six and two-thirds interests in the trust estate be delivered over by the trustees to the executor of the mother's estate. From that portion of the order requiring delivery of their interests in the trust estate to the above executor, the owners of such interests bring this appeal.

Prior to hearing of this appeal, this court had acted upon the above appeal from the order dismissing the ancillary and supplemental bill against the state and others. Our decision [62 F.(2d) 150] reversed the order of the trial court. At the time the present appeal was heard, the other appeal was pending on certiorari in the Supreme Court. It was recognized that the decision of the Supreme Court thereon would affect and might determine this appeal; therefore, this appeal was held for that decision. That decision has occurred (290 U. S. 18, 54 S. Ct. 18, 78 L. Ed. ——) and, we think, determines this appeal. That decision reversed this court. The Supreme Court held that the dismissal of the ancillary and supplemental bill was proper because that bill was an attempted suit against a state in violation of the Eleventh Amendment and that the scope of that amendment was not limited by a purpose to protect the jurisdiction of a federal court and to maintain its decree against a proceeding by the state in a state court. While the court (page 22 of 290 U. S., 54 S. Ct. 18, 19) said: "There is a question between the parties here as to the scope of this decree, but we may assume, for the present purpose, that this decree, as stated by the Circuit Court of Appeals in the decision under review [62 F.(2d) 150, pages 151, 153, 154], determined the rights of the present respondents by virtue of their remainders under the will of Ehrhardt D. Franz. The decree, as thus construed, determined that certain shares, with their increase through stock dividends, were corpus of the estate of Ehrhardt D. Franz, and not income, and hence that Sophie Franz had only a life interest. Buder v. Franz (C. C. A.) 27 F.(2d) 101, pages 105, 113, 114." Yet it said (page

29 of 290 U. S., 54 S. Ct. 18, 21) also: "We express no opinion upon the question whether the decree of the District Court, entered during the lifetime of Sophie Franz, the life tenant, in this suit to which she, her trustees, and the remaindermen were parties, can be regarded as binding upon the state of Missouri with respect to its subsequent claim for inheritance taxes against the shares in controversy as a part of the life tenant's estate. That question is not before us. Whatever may be found to be the effect of this decree in that relation, the result is the same so far as the present question of the right of respondents to bring this bill against the state is concerned. If the state, by reason of the fact that it was not a party to the litigation, is not bound by the decree, it is manifestly free to litigate its claim to the taxes in the proceeding it has instituted in its own court. United States v. Lee, 106 U. S. 196, 222, 1 S. Ct. 240, 27 L. Ed. 171; Tindal v. Wesley, supra, 167 U. S. page 223, 17 S. Ct. 770, 42 L. Ed. 137; McClellan v. Carland, 217 U. S. 268, 282, 30 S. Ct. 501, 54 L. Ed. 762. But, if the decree of the federal court can be considered as determining the ownership of the shares so as to bind the state in later tax proceedings upon the death of the life tenant, and there is a federal right to have that effect given to the decree, that federal right can be specially set up and claimed in the proceeding in the state court, and, if the right is finally denied, the decision may be the subject of review by this Court in case the appropriate procedure is followed. Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 46, 30 S. Ct. 10, 54 L. Ed. 80. See Tilt v. Kelsey, 207 U. S. 43, 28 S. Ct. 1, 52 L. Ed. 95. The contention that the question of ownership of the shares has been finally determined by the federal court affords no ground for the conclusion that the federal court may entertain a suit against the state, without its consent, to prevent the state from seeking to litigate that question in the state court."

We take the last above quotation as meaning that the rights of these appellants as to this matter are to be determined in the state court litigation and that such rights may be there protected through ultimate presentation to the Supreme Court itself. While we entertain no doubt as to what those rights are—as we have more than once declared them in the course of this extended litigation [see 62 F.(2d) 150]—yet the above is the orderly, constitutional method of determination as expressed by the Supreme Court. In this condition of the litigation it would be idle for this court to reverse the trial court in its order turning these funds over to the state court. As to this court, this appeal is in the nature of a moot case, since the litigation as to the issue here is to be determined in the state court. If we decide the issue (as we would) in favor of appellants and the state court, or ultimately the Supreme Court of the United States should reach the same determination, we would have accomplished nothing. If there should be a diversity of decision, we cannot see how our decision would cause anything but confusion if it had any effect. In this very unusual situation it seems the wise course to dismiss the appeal. While this is not truly a moot case, it is analogous thereto.

The appeal should be, and is, dismissed.